**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**KYLE RAY**, an individual,

    Plaintiff,

vs.

**HOBBS POLICE DEPARTMENT;**
**AUGUST FONS; NICHOLAS GOULET;**
**and MANNY GOMEZ**

    Defendants.

No. 2:23-cv-690

**COMPLAINT FOR DAMAGES**
*Jury Demand*

**COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT, AND FOR VIOLATIONS OF THE FOURTEENTH AND FIRST AMENDMENTS OF THE UNITED STATES CONSTITUTION**

    Plaintiff Kyle Ray (hereinafter referred to as "Plaintiff"), a former K9 police officer, by and through his undersigned counsel, Joseph M. Zebas, ZEBAS LAW FIRM, L.L.C., and brings this complaint under NMSA 1978, § 10-16C-1 through Section 10-16C-6, the Whistleblower Protection Act, and 42 U.S.C. § 1983 for damages resulting from the violation of the due process clause of the United States Constitution; and, resulting from the retaliation against him for engaging in protected activities, and engaging in speech while employed by the Hobbs Police Department (hereinafter referred to as "HPD") as a police officer voicing public concern for the safety, wellbeing, and constitutional rights of civilians and other officers working for the HPD.

**JURISDICTION AND VENUE**

    Plaintiff brings this Complaint under 42 U.S.C. § 1983 for damages resulting from the Deprivation of Civil Rights inflicted upon him by Defendants. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331. Personal jurisdiction is proper since all parties reside, are employed, or have significant contacts in the District of New Mexico.

1

Additionally, Defendants' actions giving rise to Plaintiff's claims took place within the District of New Mexico. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b) as Defendants' actions causing injury to the Plaintiff took place within the District of New Mexico. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's claims brought under NMSA 1978, § 10-16C-1 through Section 10-16C-6 of the Whistleblower Protection Act.

## PARTIES

1. Plaintiff was a K9 officer employed by the Hobbs Police Department in the City of Hobbs, New Mexico.

2. Hobbs Police Department (hereinafter referred to as "Defendant HPD") is an entity within the County of Lea, State of New Mexico, and a municipality and person pursuant to Section 1983.

3. August Fons (hereinafter referred to as "Defendant Fons") was always an employee of HPD, and the acting Chief of Police at all times relevant hereto. Fons is sued in his official and individual capacity.

4. Nicholas Goulet (hereinafter referred to as "Defendant Goulet") was always an employee of the City of Hobbs, and the acting director of Human Resources at all times relevant hereto. Defendant Goulet is sued in his official and individual capacity.

5. Manny Gomez (hereinafter referred to as "Defendant Gomez") was always an employee of the City of Hobbs, and the acting City Manager at all times relevant hereto. Defendant Gomez is sued in his official and individual capacity.

## FACTUAL BACKGROUND

6. Plaintiff was first hired at Defendant HPD in June 2012 and in 2015 he was assigned as a K9 handler.

7. Plaintiff had a few minor discipline incidents with Defendant HPD, including using indecent language during a situation with an armed subject and exceeding necessary speed during a manhunt

for an armed violent subject. Plaintiff had a crash with his patrol vehicle and a diabetic driver having a medical episode. Shane Blevins and Captain Cooley reprimanded Plaintiff for not sacrificing himself and his vehicle. Afterward, Shane Blevins assigned Plaintiff to multiple broken and defective units as punishment.

8. In 2017, Plaintiff submitted a request to attend K9 trainer course, which was ultimately given to another K9 Officer who had a long and troublesome and disciplinary history and was in a close friendship with the Lieutenant who was the K9 Unit Commander.

9. Plaintiff also applied for an open Agent position at the Lea County Drug Taskforce in 2017 and was denied, even though he had a significant advantage in training and experience and was senior to all the other applicants. When Plaintiff asked his Lieutenant why he was not chosen and what he could do differently when applying to this position, he was told "We like you exactly where you are". Plaintiff took this to mean he would not be considered for advancement at Defendant HPD.

10. Due to him not being considered for advancement in his career at Defendant HPD, Plaintiff applied to be a Deputy Sheriff at Lea County Sheriff's Office in June of 2017. He was accepted and began employment with them after resigning with Defendant HPD. Plaintiff did an exit interview with the City Manager and stated his major issues for leaving were inconsistent discipline, favoritism, and the administration ignoring immoral and illegal actions by Officers and Administrators.

11. Plaintiff was assigned as an Agent to the Lea County Drug Task Force within six (6) months of being employed with the Lea County Sheriff's Office. He was employed with the Lea County Sheriff's Office from 2017 until early 2020. During his time there, he received a LIFE SAVER award and a letter of commendation. Lea County Sheriff's Office had no interest in expanding its K9 program, which was Plaintiff's long-term career goal. Plaintiff left his position on good terms.

12. Plaintiff re-applied to Defendant HPD and prior to accepting his offer of employment met with then Chief of Police, John Ortelano, over the phone and in person. Plaintiff expressed his concerns and negative experience with Shane Blevins as well as a couple other administrators. Chief Ortelano stated to him that many of the previous administrator's abuse of power would not continue under his command. Plaintiff started working with Defendant HPD again in April 2020.

13. Within six (6) months, Plaintiff applied and was certified and accepted into the K9 program.

14. The following spring, Defendant HPD K9 team was given permission to attend the 2021 National Police K9 Conference in Las Vegas, NV. There were originally 7 members selected to attend the conference, with Plaintiff being one of them.

15. Just before the conference, the City reduced the travel to only 3 handlers who were approved to attend. Plaintiff made the decision to use hie personal paid time off and his own money to attend the conference with the other members of his team.

16. On April 7, 2022, Plaintiff was recommended for suspension for Pursuit Policy and Canine Use of Force. The Canine Use of Force incident occurred on December 13, 2021. Plaintiff was called to do a search of the suspect's hotel room, but Plaintiff did not look at the search warrant. The search warrant was only for subject's person and not his hotel room. The Pursuit Policy incident happened on December 14, 2021, and Plaintiff attempted to conduct a traffic stop on a suspect driving his vehicle recklessly and in doing so, violated the pursuit policy as speeds exceeded 100 MPH. These incidents are still pending arbitration.

17. January 2022, Plaintiff was elected to the position of Union Vice President and then ascended to Union President in late May 2022. During his tenure as Union VP and President, he brought multiple issues to the City of Hobbs or the Defendant HPD's attention.

18. Defendant Fons and Shane Blevins were among multiple Officers and Administrators that complaints were made regarding discrimination/targeting, hostile work environment,

unethical/illegal actions by a K9 Officer, and workplace conditions.

19. On January 31, 2023, Plaintiff filed several Union complaints to the City of Hobbs Human Resources, City Attorney's Office, and City Manager's Office. Defendant Goulet responded to Plaintiff stating that he didn't believe the believe the Union should be involved because it did not directly pertain to the "Collective Bargaining Agreement." Plaintiff informed Defendant Goulet, that the Union's charter does involve addressing workplace conditions and discrimination, as well as citing materials/classes mandated by Human Resources which clearly state, resolving workplace discrimination is a function of Human Resources. Plaintiff was later given written notice that the Police Department Administration and Human Resources would no longer correspond with him and that any further complaints needed to be delivered to the City Attorney's Office.

20. It was these complaints and investigations that Plaintiff believes he was unjustly targeted for retaliation from Defendant Fons.

21. On February 1, 2023, Brandon Solomon filed a complaint against Plaintiff after he was called to a traffic stop by Brandon Solomon on January 24, 2023, to do an open-air sniff on the vehicle he had pulled over. Plaintiff's K9, Uli, did not perform properly so Plaintiff advised Brandon Solomon that he would not call Uli's behavior a positive alert, which in turn would not give Brandon Solomon probable cause to search the suspect's vehicle.

22. During the internal affairs process of this complaint, Plaintiff was also advised that they had found inconsistencies/errors in his K9 logs from Spring 2022, approximately a year before. Defendant Fons and Shane Blevins advised Plaintiff that these errors constituted falsifying documentation. It is Defendant HPD's policy that the supervisor is to review each K9 and approve them, so these inconsistencies/errors should have been addressed to Plaintiff a year prior.

23. On March 14, 2023, Plaintiff was served with a pre-termination notice with a hearing date of March 21, 2023. During those seven days, Plaintiff was left on patrol, despite the allegations of

dishonesty. After the March 21, 2023, hearing with Defendant Fons, Plaintiff was again returned to patrol duty, pending Defendant Fon's written decision.

24. Plaintiff openly accused Defendants of retaliation based on his union complaints and how his errors/inconsistencies in his K9 logs were not properly reviewed by his supervisors, during the hearing with Defendant Fons. Plaintiff had submitted four union complaints to the City of Hobbs on January 31, 2023, and the internal affairs investigation of Plaintiff began February 1, 2023.

25. Plaintiff was served with his final termination paperwork on April 6, 2023, at approximately 3:30 pm. He requested an equipment list from Lt. Mattocks so he could gather all the equipment to return to Defendant HPD. Lt. Mattocks and K9 Officer Joshua Thomas were at this house by 4:15 pm to immediately pick up his K9 Uli, per Shane Blevins orders.

26. While he was returning Uli to Lt. Mattock, he told him that he had heard from another officer that Brandon Solomon had stated that "He (Solomon) didn't mean for him (Plaintiff) to get fired, he just wanted him to get his dog taken from him". Lt. Mattock told Plaintiff he would look into the allegation.

27. As of today, Plaintiff has not had his due process through the City of Hobbs and Hobbs Police Officers Association, specifically his Article 15-Grievance Procedure, as well as his State and Federal Labor protections.

**COUNT I – VIOLATIONS OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT**

28. Plaintiff re-alleges and incorporate each paragraph above as if stated herein.

29. HPD is a public employer as defined by NMSA 1978, § 10-16C-2.

30. During all times relevant to this Complaint, Plaintiff was a public employee as defined by NMSA 1978, § 10-16C-2B.

31. Plaintiff had reasonable bases to believe that his coworkers and supervisors had acted

6

unlawfully and improperly; and when he reported that misconduct, Plaintiff acted in good faith.

32. Through attempts to report the misconduct and discrimination at Defendant HPD, and ultimately unveil the culture, Plaintiff engaged in activities expressly protected by § 10-16C-2E and § 10-16C-3 A and B of the New Mexico Whistleblower Protection Act (hereinafter referred to as "WPA").

33. When Plaintiff unveiled the illegal practices at Defendant HPD, Defendants retaliated by out-casting Plaintiff and ensuring that Plaintiff would have to work in a difficult environment.

34. Defendants violated the WPA by retaliating against Plaintiff for bringing these complaints to their attention and the attention of the City of Hobbs.

35. As a direct result of Defendant HPD's illegal retaliation against Plaintiff, they are and continue to be damaged in an amount to be proven at trial, which includes but is not limited to; lost past and future wages, lost employment benefits, lost overtime, humiliation including loss of professional reputation and standing, loss of opportunities for promotions, emotional distress, and other compensatory damages.

36. Public policy encouraged Plaintiff to speak out concerning the misconduct at HPD.

37. Defendants' retaliatory conduct was such that the imposition of punitive damages is authorized.

### COUNT II – VIOLATIONS OF THE FIRST AMENDMENT RIGHTS TO FREE SPEECH TO ASSOCIATION UNDER THE UNITED STATES CONSTITUTION

38. Plaintiff re-alleges and incorporates each paragraph above as if stated herein.

39. Under the First Amendment of the United States Constitution, "Congress shall make no law… abridging the freedom of speech, or of the pre…." U.S.C.A. Const. Amend. I.

40. Plaintiff intended to bring to light wrongdoings and breaches of public trust by Defendant HPD and disclose evidence of impropriety and malfeasance within the Department to protect

citizens and other officers from invidious discrimination. Police officers are, as a class, the members of a community most likely to have informed and definite opinions as to how to police communities. Plaintiff is, as a police officer, in a valuable and unique position to provide community policing to heal distrust between the civilian community and Defendant HPD. Accordingly, it is essential that they be able to speak out freely on questions of policing communities without fear of retaliatory actions or dismissal.

41. This was a First Amendment-protected speech on a matter of public concern.

42. Defendants' interest in promoting the efficiency of its public service did not outweigh this public concern, nor invidious retaliation.

43. This protected speech was a motivating factor in the adverse employment actions by Defendants, taken against Plaintiff.

44. Defendants violated Plaintiff's rights to free speech and to free association, guaranteed under the First Amendment when they unreasonably subjected Plaintiff to retaliation for exercising his protected rights.

45. Defendants punished and retaliated against Plaintiff for his speaking out against Defendant HPD unlawful practices.

46. Defendants violated constitutional law and were deliberately hostile toward Plaintiff.

47. Defendants are liable under 42 U.S.C. § 1983.

48. Plaintiff seeks relief from this Court under the First Amendment of the United States Constitution.

**COUNT III – FOURTEENTH AMENDMENT
VIOLATIONS OF SUBSTANTIVE DUE PROCESS**

49. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if re-alleged fully herein.

50. Plaintiff has a liberty interest and/or property interest in his employment as a law

enforcement officer and his right to air his grievances for the harassment, discrimination, and retaliation he endured and witnessed at Defendant HPD to his chain of command.

51. Defendants violated Plaintiff's liberty interests which entitled him to the right to prevent persons in governmental positions of power from depriving individuals of their constitutional right to due process.

52. Defendants discriminated against Plaintiff, in violation of his right to liberty and property interests and they are thus liable in violation of 42 U.S.C. § 1983 and violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

53. Defendants discriminated against Plaintiff, for his voicing of the unlawful practices of Defendant Fons, and Defendant HPD.

54. Defendants had notice of a hostile environment at the Defendant HPD for Plaintiff and those who speak out against unlawful practices, and the Defendants failed to adequately respond to a hostile environment and instead retaliated against Plaintiff.

55. Defendants are liable for punitive damages for their invidious discrimination and retaliation against Plaintiff.

56. Defendants' actions towards Plaintiff shocks the conscience.

57. Defendants' actions intentionally and willfully deprived Plaintiff of his liberty interests and property interests without due process of law and without recourse for the arbitrary, abusive, and harassing conduct of Defendants toward Plaintiff.

58. Defendants' actions proximately caused damages to Plaintiff as previously alleged.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court grant judgment in his favor and against Defendants based on the violations of the New Mexico Whistle Blower Protection Act and the Equal Protection Clause and the First Amendment of the United States Constitution; award

actual damages; attorney fees and costs; special damages; and punitive damages against individual Defendants Fons, Defendant Goulet and Defendant Gomez for their hateful conduct towards Plaintiff and other law enforcement officers working in Lea County, New Mexico.

    Respectfully submitted,

**ZEBAS LAW FIRM, L.L.C.**

By: */s/ Joseph M. Zebas*
Joseph M. Zebas, Esq.
P.O. Box 1675
Hobbs, NM 88241-1675
T: (575) 393-1024
F: (575) 393-1234
joe.zebas@zebaslaw.com

*Attorney for Plaintiff*